### PEOPLE ex rel. HITCHCOCK v. LAMB.

(Supreme Court, Special Term, New York County. August 1, 1910.)

HABEAS CORPUS (§ 94*)—PROCEEDINGS—LACHES.

Where relator escaped trial for first degree murder by being confined in the asylum after her examination by a lunacy commission, and the regularity of the lunacy proceedings was not raised by her attorney, who is now her attorney in habeas corpus proceedings, for more than a year and a half after the lunacy proceeding, it is too late for relator to claim in the habeas corpus proceedings that the former proceeding was fatally defective, in that the provision directing the commissioners to inquire into relator's sanity was made in chambers.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 94.*]

Habeas corpus proceeding by the People, on the relation of Charlotte Hitchcock, against Robert B. Lamb, Superintendent of Matteawan State Hospital for Insane Criminals. Proceeding dismissed.

Alfred J. Talley (John J. Linehan, of counsel), for relator.
Edward R. O'Malley, Atty. Gen., and Jacob Frank, Deputy Atty. Gen., opposed.

GIEGERICH, J. The relator seeks by this application to secure her absolute release from custody, or, in the alternative, that she be remanded from the Matteawan State Hospital for Insane Criminals to the City Prison of the city of New York. By an order of the Court of General Sessions of the City and County of New York, filed October 19, 1908, the relator was committed to the Matteawan State Hospital, "there to be safely kept and detained in said hospital until she be restored to a sound state of mind and understanding, and then to be returned to the City Prison of the city of New York." At the time of such commitment the relator was under indictment for murder in the first degree; the charge being that she had killed her husband by shooting him with a revolver. After counsel had been assigned to defend her, the court appointed a commission of three distinguished alienists, namely, Drs. Hamilton, MacDonald, and Robertson, to determine whether the accused was insane at the time the act was committed, and also whether she was insane at the time when the commission was appointed. The homicide took place on November 20, 1907. The commission was appointed in the summer of 1908, holding its sessions in August, and making its report on August 31, 1908, to the effect that the accused was insane and irresponsible at the time she committed the offense charged in the indictment, and that she was still insane at the time they made their report, and that in view of her insanity and the nature of her delusions she was an unsafe person to be at large. Following this report she was committed to the Matteawan State Hospital on or about the 19th day of October, 1908, since which time she has been an inmate of that institution.

The first question to be considered is whether the relator has recovered her sanity, as is claimed on her behalf. Upon this point there

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is a conflict of evidence between the expert witnesses produced on behalf of the relator and those produced on behalf of the people. This conflict is one of opinion, and will be again adverted to hereafter. There is another conflict in the case, however, upon a question of fact. This conflict is between the relator and Dr. Sears, one of the resident physicians of the Matteawan State Hospital, who testified that on the 12th day of June, 1910, at an examination he made of the relator, she stated to him her belief in certain matters which, if believed by her, are apparently delusions. The relator denies that in that interview she expressed her belief in such matters as of the date of such interview, and claims that all she intended to express was that she had believed those matters in former times. Upon this issue I must find in favor of the hospital physician.

The question of the relator's sanity is not easy of determination. On her behalf it is claimed that the various delusions which she concededly labored under at the time she shot her husband, and subsequently no longer exist, but that her mind has cleared on these matters, and that she now remembers that she did have such false beliefs at one time, but now recognizes that they were false. Her own testimony supports this theory, but the determination of the question is made particularly difficult by the conceded fact that victims of paranoia, as it is claimed the relator is, are often acute minded, and when they find out that the recovery of their liberty depends upon their concealing or denying the delusions which they harbor they will conceal and deny such delusions. It is claimed in this case that such is the course taken by this relator. I recognize the high professional standing and the experience and skill and disinterestedness of the several medical experts who have testified to their belief that the relator is at present sane; but in view of the testimony on behalf of the people I do not feel that I would be warranted in freeing a person who has once taken human life and concerning whose restoration to sanity I have grave doubt. If it be the fact that the relator is now sane, it is an injustice that she should be confined a day longer than is necessary. It is the duty of the authorities of the State Hospital to make frequent and thorough examinations, to determine beyond peradventure whether she still is suffering from delusions, or whether by any possibility there was a misunderstanding, and that she was in fact expressing her recollection of past delusions, and not her present belief in such matters, when she conversed with the asylum physicians on June 12, 1910.

With respect to the claim that there was a fatal infirmity in the proceedings resulting in the commission above referred to, in that the provision directing the commissioners to inquire into the mental condition of the accused at the time the commission was appointed, as well as at the time of the alleged crime, was made by Mr. Justice Foster in his chambers, instead of in court, so that such addition could not properly be regarded as a court order, it is enough to say that the relator escaped trial for her life upon the report made in pursuance of that order, and that for over a year and a half her attorney in this proceeding, who also participated on her behalf in the proceedings resulting in the order and report, appears to have taken no steps to

challenge the regularity of the proceeding which resulted so largely to the benefit of his client. It is too late now to raise any question on that point.

The proceeding is therefore dismissed.